# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

February 21, 2019

**By Hand Delivery**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Timothy A. Waters
Phone: (212) 336-7601
twaters@pbwt.com

Re:    *Clark v. Transportation Alternatives, Inc.*, No. 18-cv-09985 (VM)

Dear Judge Marrero:

    We represent Defendant Transportation Alternatives, Inc. ("TransAlt") in the above-referenced action. Pursuant to Rule II.B.2 of Your Honor's Individual Rules of Practice, we write to request a pre-motion conference concerning TransAlt's proposed motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In an exchange of letters, TransAlt informed plaintiff of its intent to seek dismissal of the Complaint's sole claim of copyright infringement on the basis of fair use, which plaintiff opposed. (*See* Exhibits A and B). The parties have met and conferred subsequent to the exchange letters, but after giving due consideration to plaintiff's position, we were unable to resolve their dispute. TransAlt therefore writes to explain why a motion to dismiss remains warranted.

    This case is about a blogger known as "Bike Snob NYC" who read a *New York Post* article about cycling that he disliked, and then went on the internet to criticize the news article. The short blog entry at issue reproduced brief excerpts of the *Post* article, then went on to criticize and satirize the reporting contained in those excerpts. Among other things, the blog posted a screenshot of the *Post* article's headline—"Dockless Bikes Are Already Clogging NYC Sidewalks"—and the photograph of a "dockless" bicycle appearing directly beneath it. The blog post directly criticized the *Post* article's photojournalism: it discussed both the foreground and background of the photograph, and argued that the photograph contradicted the thesis of the article as reflected in its headline. In criticizing a published mainstream news media article, the blog post's excerpting of the *Post* article, including its photograph, is a quintessential example of fair use. And yet plaintiff, the photojournalist claiming copyright over the photograph, has filed a cut-and-paste complaint alleging willful copyright violation.

    We respectfully refer the Court to TransAlt's January 22, 2019 letter (Exhibit A) for a brief discussion of how each of the four fair-use factors favors dismissal. In his response letter, plaintiff does not meaningfully challenge that analysis. Indeed, under the case law, it is beyond reasonable dispute that non-commercial criticism and satire of a published news article constitutes fair use. Plaintiff also fails to provide any factual allegations that would call into question the critical, transformative nature of the blog post.

Instead, plaintiff makes an argument so divorced from the facts of this case that it reads as though it was cut and pasted from another source: namely, that fair use does not cover a news organization's decision to steal another photojournalist's published work and use it to support their own, independent news reporting. (*See* Exhibit B). In making this argument, plaintiff offers facile assertions that the blog post at issue is an "untransformative" piece of "news reporting." (*Id.* at 1, 3). Plaintiff offers no factual citations for those assertions because they have no basis whatsoever in the facts as alleged in (or attached to) the Complaint.

First, there is no allegation in the Complaint that the blog post is "news reporting," or anything other than what plainly appears on the face of the blog post itself: that it is targeted critique and satire of a specific news article. And even if plaintiff were to add such an allegation, it would not salvage the Complaint: even on a motion to dismiss, "[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them . . . contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal citations and quotation marks omitted).

Second, plaintiff attaches as exhibits to the Complaint both the copyrighted photograph and the blog post in question. The blog post, attached hereto as Exhibit C, is short. On its face, every sentence of the blog post is dedicated to criticizing or satirizing what the author sees as an outrageous and unsupported piece of reporting by the *New York Post*. With regard to the photograph over which plaintiff claims copyright, the blog post directly criticizes the photojournalism used to support the *Post* story, and as part of that criticism directly discusses the foreground and background of the photograph. Even with every reasonable factual inference determined in plaintiff's favor, this is a clear-cut example of <u>criticism</u> of a published news article, including its photojournalism—not independent news <u>reporting</u>.

It is well-established that "[w]orks of criticism and commentary provide the sort of new insights and understandings that are the *sine qua non* of transformative use." *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 750 (S.D.N.Y. 2017); *see also Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg LP*, 756 F.3d 73, 84 (2d Cir. 2014) (explaining transformative use is demonstrated by "altered purpose or context of the work," including existence of "surrounding commentary or criticism"). This principle readily applies to blogs and similar online forums that criticize the subject matter of news articles and their lead photographs. *See, e.g., BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 507 (S.D.N.Y. 2015) (concluding that factual allegations "clearly militate[d] for a finding of transformative use" as to certain photographs, where the defendant copied other gossip tabloids' headlines and the lead photographs "used to illustrate or bolster the[ir] stories," and then "proceed[ed] to attack the factual bases of th[o]se stories" as unsubstantiated rumor); *see also Katz v. Google, Inc.*, 802 F.3d 1178, 1180-83 (11th Cir. 2015) (concluding blog post's use of unflattering photograph was transformative "in the context of the blog post's surrounding commentary"); *Weinberg v. Dirty World LLC*, 2017 U.S. Dist. LEXIS 221759, at *20-24 (C.D. Cal. July 27, 2017) (finding "paradigmatic" transformative use where blog post "use[d] the [photograph] as part of a direct critique" of "the subject of the copyrighted work, in stark contrast to the original positive use of the work").

2

That is precisely the case here. The author of TransAlt's blog post identified a *New York Post* news article about dockless bicycles in New York City, disagreed with the article's reporting, inserted a screenshot of the article's headline and lead photograph, and then added surrounding commentary critiquing the article. (*See* Exhibit C at 4). The blog post satirized the *Post* article's general bias against dockless bicycles and, in particular, criticized the article as inconsistent in reporting that the same bicycles that "clog" city sidewalks are also too scarce for riders seeking their use. (*Id.*). In making its point, the blog post explicitly commented on the composition of plaintiff's photograph, arguing that its depiction of a dockless bicycle that was "considerately" parked on an otherwise "clogged" city sidewalk did not support the *Post* article's headline or reporting. (*Id.*). Even accepting all factual allegations as true and giving the plaintiff the benefit of every reasonable inference, there is simply no dispute that the photograph was used "as part of a direct critique" of the subject of article and its photojournalism, *Weinberg*, 2017 U.S. Dist. LEXIS 221759, at \*23-24, and thus was published "in a different context . . . than in the publications from which the image[] [was] copied," *BWP Media*, 87 F. Supp. 3d at 507. This is quintessentially transformative fair use. It cannot reasonably be viewed, under the alleged facts or any inferences reasonably drawn therefrom, as a mere repackaging of the news reporting purpose that the photograph originally served.

Finally, outside of his baseless and incorrect claim that the blog post constituted nontransformative news reporting, plaintiff offers only one other substantive argument: that he is entitled to a "presumption of market harm" under *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). (Exhibit B at 3). But the Supreme Court has long since clarified that "[n]o 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994). Plaintiff offers no citations to the Complaint or any other basis to dispute that TransAlt—a non-profit, pro-bicycling advocacy organization—had no commercial purpose in its use of the photograph as part of its blog criticism. By its own terms, the *Sony* presumption is inapplicable to these facts—and in any event, later cases have cautioned against the presumption's existence. *See, e.g., Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 921 (2d Cir. 1994).

Without the *Sony* presumption of market harm, plaintiff has no basis to argue that the fourth factor of the fair-use analysis—*i.e.*, market harm—goes in his favor. Plaintiff alleges that he is in the business of licensing his photographs to news organizations, but there is "no protectable derivative market for criticism" of his work. *Campbell*, 510 U.S. at 592-93. The blog post's transformative, critical use of the photograph did not, as a matter of law, offer a market substitute. *See Arrow Prods. v. Weinstein Co., LLC*, 44 F. Supp. 3d 359, 368, 372 (S.D.N.Y. 2014) (concluding at pleading stage that fourth factor favored fair use because secondary work "adding a new, critical perspective" to original work "clearly constitute[d] a transformative use"); *see generally NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 481-82 (2d Cir. 2004) (fourth factor examines whether copy "offer[s] a market substitute for the original" work).

We look forward to discussing defendant's proposed motion to dismiss with the Court at the requested pre-motion conference.

3

Respectfully submitted,

*[signature]*

Timothy A. Waters

Enclosures

cc:   Counsel of record (*via electronic mail, w/ enclosures*)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendant.

SO ORDERED.

2-22-19
DATE

*[signature]*
VICTOR MARRERO, U.S.D.J.

# EXHIBIT A

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

January 22, 2019

Timothy A. Waters
Phone: (212) 336-7601
twaters@pbwt.com

Richard Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580

Re: *Clark v. Transportation Alternatives, Inc.*, No. 18-cv-09985 (VM)

Dear Mr. Liebowitz:

As you know, we represent defendant Transportation Alternatives, Inc. ("TransAlt") in the above-referenced matter. We write pursuant to Rule II.B.1 of the Court's Individual Rules of Practice to inform you of our intent, if necessary, to move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and seek a pre-motion conference in connection therewith. We intend to seek dismissal of the Complaint's sole claim of copyright infringement, on the basis of fair use.

You have filed a nuisance-value suit against a nonprofit because it posted a blog that critiqued and satirized a *New York Post* article that happened to use plaintiff's allegedly copyrighted photograph. This is a clear-cut case of fair use, and one capable of resolution on the pleadings. Because fair use defeats the asserted copyright claim as a matter of law, we do not expect that amendment or other measure short of voluntary dismissal can remedy the deficiency.

A. **Factual Background**

TransAlt is a 501(c)(3) non-profit organization that advocates for improvements to New York City's bicycling, walking, and public transit infrastructure, with the goal of reducing urban automobile traffic. TransAlt maintains a website featuring, *inter alia*, a "Daily Bike Forecast," which is a public blog written by an individual known as "Bike Snob NYC." (*See* Cmplt. ¶ 6, Ex. C). The blog provides cyclists with daily weather and route information, and offers pro-cycling commentary on current events, including news articles involving cycling issues. (*See id.*, Ex. C).

This action concerns the Daily Bike Forecast blog post for August 7, 2018. Part of that blog post critiqued news articles concerning cycling issues. (*Id.*). One of the news articles critiqued was a *New York Post* article published the day prior, entitled "Dockless Bikes Are Already Clogging NYC Sidewalks." (*Id.*). The blog included a screenshot of the top portion of the *Post* article, including the article's headline and lead photograph, and quotes four sentences from the article. (*Id.*). Plaintiff claims copyright over the photograph used in the *Post* article, which is a snapshot of a dockless bicycle on an unidentified public street. (*Id.* ¶¶ 7-9). Plaintiff's claim in this action rests entirely on the fact that the blog's screenshot of a portion of the *Post* article included the allegedly copyrighted photograph.

The blog post criticized and satirized the *Post* article. For example, the blog critiqued what it saw as inconsistencies in the *Post* article's argument: "Wait, are the bikes 'clogging NYC sidewalks,' or are there not enough of them?" (*Id.*, Ex. C). The blog also satirized what it viewed as the melodramatic tone of the *Post* article: "Still, spare a thought for the Rockaway resident who sometimes sees bikes remain in the same place fore [*sic*] three (3) whole days. . . . Why not just move the bike yourself if it's bothering you so much?" (*Id.*). The blog argued that the *Post* article's hand-wringing over bicycle parking was foolish because improperly parked cars create a much greater nuisance. (*Id.*). And, importantly, the blog directly criticized both the composition of plaintiff's allegedly copyrighted photograph and the *Post* article's use of that photograph, saying: "that bike appears to be parked rather considerately, and the only thing in the photo clogging the sidewalk is that mail cart." (*Id.*).

## B. Fair Use

TransAlt's reproduction of plaintiff's photograph for purposes of "criticism, comment," and satire constitutes quintessential fair use and, therefore, "is not an infringement of copyright." 17 U.S.C. § 107. The Complaint therefore fails as a matter of law and must be dismissed.

### 1. Fair Use May Be Resolved on a Motion to Dismiss

It is "entirely appropriate" under the circumstances presented here for the Court to decide issues of non-infringement—including TransAlt's fair use defense—at this early stage of the proceeding. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *see also, e.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015). Affirmative defenses may be adjudicated on the pleadings "where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). In copyright, where the original and allegedly infringing works appear within the complaint itself or are attached as exhibits or incorporated by reference, the court has before it "all that is necessary" to make a fair use determination. *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 64; *BWP Media*, 87 F. Supp. 3d at 505; *see also Cariou v. Prince*, 714 F.3d 694, 707-08 (2d Cir. 2013) (discussing approvingly *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)); *Arrow Prods. v. Weinstein Co., LLC*, 44 F. Supp. 3d 359, 367-68 (S.D.N.Y. 2014) (finding fair use at pleadings stage and noting "[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue").

That is precisely the case here. This dispute requires comparison of only two items: the allegedly copyrighted photograph and the blog post commenting on it. Both appear, in full, as exhibits to the Complaint. (*See* Cmplt., Exs. A, C). The entirety of the *Post* article, to the degree relevant, is incorporated by reference. Because TransAlt's fair use is evident from the blog post itself, the pleadings provide all the Court needs to decide fair use at this stage.

### 2. TransAlt's Fair Use Defense Requires Dismissal

Fair use requires consideration of four non-exclusive factors: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of

2

the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Review of the blog post shows that each factor weighs in favor of fair use, thus requiring dismissal of the Complaint.

The first factor considers whether TransAlt's use is transformative or commercial. Transformative uses lie at the heart of the fair use doctrine, and are evidenced by the "altered purpose or context of the work" as well as "surrounding commentary or criticism." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg LP*, 756 F.3d 73, 84 (2d Cir. 2014). The blog post's use of the photograph for criticism and satirical commentary was plainly transformative. *See Weinberg v. Dirty World LLC*, 2017 U.S. Dist. LEXIS 221759, at *20-21 (C.D. Cal. July 27, 2017) (finding transformative use where blog was "directly critical of the subject of the [photo], in stark contrast to the [photo's] original positive use"); *see also Katz v. Google, Inc.*, 802 F.3d 1178, 1182 (11th Cir. 2015); *Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812, at *2-3 (S.D.N.Y. June 21, 2017). And the non-commercial use of the photograph is plain both on the face of the blog post and from the fact that TransAlt is a non-profit advocacy organization. *See Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 353 (S.D.N.Y. 2017). Accordingly, the first factor strongly weighs in favor of fair use.

The second factor—which considers whether the copyrighted work is "expressive or creative" and "published or unpublished," *Cariou*, 714 F.3d at 709—also favors fair use. The photograph at issue is a purely factual snapshot and had been previously published in the *Post*.

At the third factor, the inquiry is "whether the amount copied is reasonable in relation to the purported justifications for the use under the first factor." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014). Reasonableness, in turn, depends on the extent to which TransAlt's use was transformative. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 588 (1994). Here, because the entire photograph was necessary for the blog post's critical and satirical commentary concerning both the foreground (the parked bicycle) and the background (the mail cart) of the photograph, the factor favors fair use. *See Ferdman v. CBS Interactive, Inc.*, 2018 U.S. Dist. LEXIS 162835, at *49 (S.D.N.Y. Sept. 21, 2018).

The fourth factor considers whether TransAlt's use "usurps the market of the original work." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 481-82 (2d Cir. 2004). The blog post used the photograph for transformative criticism—of the photograph itself and the *Post* article in which it appeared—and therefore did not, on its face, offer a substitute good usurping plaintiff's licensing market to news outlets. Because the law gives plaintiff "no protectable derivative market for criticism" of his work, *Campbell*, 510 U.S. at 592-93, this factor also favors fair use.

Respectfully submitted,

Timothy A. Waters

cc: The Honorable Victor Marrero (*via facsimile*)

3

# EXHIBIT B



| | |
|---|---|
| Liebowitz ● Law Firm, PLLC<br>ATTORNEYS FOR THE PHOTOGRAPHIC ARTS | 11 SUNRISE PLAZA, STE. 305<br>VALLEY STREAM, NY 11580<br>(516) 233-1660<br>WWW.LIEBOWITZLAWFIRM.COM |

January 24, 2019

**VIA FAX**

Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street, Suite 1040
New York, NY 10007-1312

Re:   *Clark v. Transportation Alternatives, Inc.*, 1:18-cv-09985 (VM)

Dear Judge Marrero:

      We represent *New York Post* photographer Dennis Clark in the above-referenced action and write in opposition to Defendant Transportation Alternatives, Inc. ("Defendant")'s request for a pre-motion conference to file a motion to dismiss the complaint based on the fair use doctrine, 17 U.S.C. §107(c).

      Defendant's chief argument is that because it qualifies for tax-exempt status as a 501(c)(3) organization, it necessarily has a license to expropriate intellectual property from working-class photojournalists without their authorization and without paying the customary licensing fee. By the same token, would Defendant also have the right, by virtue of its tax-exempt status, to steal food from a restaurant or shoplift merchandise from a department store for a charitable cause? We do not believe so.

**A.   Notwithstanding Defendant's Tax-Exempt Status, The First Factor (Purpose and Character of Use) Weighs Against Fair Use**

      Aside from asserting its non-for-profit status, none of the factors weigh in favor of fair use. With respect to the first factor, the Supreme Court holds that "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985). Defendant's use of plaintiff's photograph of a dockless bicycle on a New York City sidewalk to illustrate a news report about dockless bikes is wholly untransformative. The law in this Circuit is crystal clear: no transformation exists where the image is merely used as an illustrative aid to depict the subjects described in the news article. *See, e,.g, Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) (rejecting fair use where defendant's argument, "if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph."); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 196 F.Supp.3d 395, 407

Liebowitz ⬤ Law Firm, PLLC

(S.D.N.Y. 2016) (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple"); *Ferdman v. CBS Interactive, Inc.*, No. 17-cv-1317 (PGG), 2018 WL 4572241, at *12 (S.D.N.Y. Sept. 24, 2018) (the "Article involves the use of an image solely to present the content of that image. Such a use is not transformative"); *Hirsch v. Complex Media, Inc.*, 18-cv-5488 (CM), 2018 WL 6985227 (S.D.N.Y. Dec. 10, 2018) (denying Rule 12 motion on fair use where "Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative."). "Newsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job." *BWP Media USA*, 196 F. Supp. 3d at 406 n.6.

Defendant argues that its infringing article is transformative because it criticizes the New York Post's position on dockless bicycles. But Plaintiff doesn't claim any copyright ownership in the New York Post article or its accompanying text. He owns the Photograph and there is no commentary or criticism directed at the Photograph itself. As the courts in this District have made repeatedly clear, to qualify for the fair use privilege, the news reporting or commentary must be directed at the copyrighted work itself, i.e., the Photograph at issue. *See, e,.g., Barcroft*, 2017 WL 5032993, at *6 (in the context of news reporting, a photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context . . . [thus,] "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph."); *Konangataa v. Am. Broadcasting Companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ("Defendants and other news outlets reported on the Video [of a woman giving birth] and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal."); *accord Otto v. Hearst Communications, Inc.*, 17-cv-4712-GHW, 2018 WL 651801 at *8 (S.D.N.Y. December 10, 2018) (rejecting fair use defense on summary judgment but noting that secondary use may be transformative where defendant reports on a controversy that arose because of the copyrighted photograph itself); *see also Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photograph of Miss Puerto Rico Universe was published by newspaper to comment on the controversy surrounding the very existence of the photographs).

**B.    The Second Factor (Nature of the Work) Weighs Against Fair Use**

The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2). "Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations." *Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996). Here, the photograph at issue depicts a simple subject that has been artfully composed using a creative angle. As far as bicycle photos are concerned, Clark's image is highly original. In any event, "courts traditionally have also afforded this factor little weight, characterizing it as 'rarely [ ] determinative.'" *Hirsch v. Complex* at *7

**C.    The Third Factor (Amount and Substantiality) Weighs Against Fair Use.**

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the

2

Liebowitz ⬤ Law Firm, PLLC

quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). As a quantitative matter, Defendant has taken the entire full-color photograph. This fact alone weighs against fair use. *See Associated Press v. Meltwater*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").

As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose of news reporting. *See Rogers v. Koons*, 960 F.2d at 311. The Photograph was reproduced by Defendant in full color without any visible modification or alteration. Defendant's wholesale reproduction of the Photograph, without any aesthetic alteration, demonstrates the image's qualitative value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression."). Moreover, Defendant's copying of the Photograph was unnecessary to achieve Defendant's news reporting purpose. There were several legal alternatives available to Defendant: (1) Defendant could have commissioned its own photographer to photograph a dockless bicycle; (2) Defendant could have published its news story *without* any photo whatsoever; or (3) Defendant could have obtained a license directly from Plaintiff. Defendant has failed to show why its republication of the Photograph was necessary to its own article.

**D.     The Fourth Factor (Market Harm) Weighs *Heavily* Against Fair Use.**

With respect to the fourth factor, because Defendant copied a full-color, full-scale image in its entirety and did nothing to transform it aesthetically, Plaintiff is entitled to *Sony's* presumption of market harm. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright"); *see also Ferdman*, 2018 WL 4572241, at *19 (applying *Sony*'s presumption of market harm to news reporter's use of Spiderman photographs where the secondary use was non-transformative).

Defendant's secondary use impairs the actual market for Clark's photograph because there was a fully functioning market demand for his work. *See Associated Press*, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee"). Defendant's unauthorized posting of the Photograph made it unlikely that the market would purchase the Photograph from Plaintiff and therefore diminished the licensing value of the copyright. Moreover, if the Court were to find fair use based solely on Defendant's tax-exempt status, then every non-profit would enjoy a blanket license to steal photographs.

Based on the foregoing, Defendant's proposed motion to dismiss should be DENIED.

Respectfully Submitted,

/s/richardliebowitz/
Richard Liebowitz

3

# EXHIBIT C



3:40 PM - Aug 6, 2018

♡ 88  ○ 31 people are talking about this

Please.

If placard-wielding Marty Golden can prove he knows how to operate a Muni Meter I'll pay every one of his outstanding speed camera tickets.

Moving on, here comes the Post to throw dockless bike share under the bus:



**Dockless bikes are already clogging NYC sidewalks**

*Uber subsidiary JUMP placed 100 of its "pedal-assist" dockless bikes near Fordham University and in the central Bronx on July 28 — and on at least one day last week only eight of them were anywhere to be found in the service area.*

*Of those, only two were even in rideable condition. The rest were either not charged up or already broken. Five of them were piled together on a sidewalk, all flashing the message, "Bike in repair, sorry for the inconvenience."*

Wait, are the bikes "clogging NYC sidewalks," or are there not enough of them? Sure, I agree

Case 1:18-cv-09985-VM Document 18 Filed 02/22/19 Page 15 of 20

10/29/2018 August 7th, 2018: There Aren't Enough Dockless Bikes And They're Cluttering The Sidewalks | Transportation Alternatives

Case 1:18-cv-09985-VM Document 1-3 Filed 10/29/18 Page 3 of 8



Daily Bike Forecast    by Bike Snob NYC (/bike-forecast/)

# August 7th, 2018: There Aren't Enough Dockless Bikes And They're Cluttering The Sidewalks

- Install iPhone app (https://itunes.apple.com/us/app/transalt/id1364992964)
- Install Android app (https://play.google.com/store/apps/details?id=com.transportationalternatives.transalt&hl=en)
- Receive the forecast via email (http://my.transalt.org/site/Survey?ACTION_REQUIRED=URI_ACTION_USER_REQUESTS&SURVEY_ID=12467&pw_id=3581)

Hot again today (https://forecast.weather.gov/MapClick.php?lat=40.71455000000003&lon=-74.00713999999994#.W2iOe_5KilY):



**Tuesday** A 30 percent chance of showers and thunderstorms after 2pm. Mostly sunny, with a high near 91. Heat index values as high as 96. Southwest wind 6 to 9 mph, with gusts as high as 20 mph.

**Tuesday Night** A 30 percent chance of showers and thunderstorms, mainly before 3am. Mostly cloudy, with a low around 76. South wind 6 to 8 mph.

**Sunrise:** 5:58am

**Sunset:** 8:04pm

Take your time, and try not to lose your temper at that annoying co-worker who's always reminding you to "hydrate."

It may have been rained out last week, but tomorrow the Bike Train rolls again:

Case 1:18-cv-09985-VM Document 18 Filed 02/22/19 Page 16 of 20

10/29/2018 August 7th 2018: There Aren't Enough Dockless Bikes And They're Clogging The Sidewalks | Transportation Alternatives



 **Maximillian**
@MaxSholl

Join us on 8/8 Weds morning for our weekly #BikeTrain! Meet & ride with some folk that want the best possible #LtrainShutdown plan, including improvements to #BikeNYC, #WalkNYC & a good 'ole #BusTurnaround.

>> facebook.com/events/6270852...
5:18 PM - Aug 4, 2018

♡ 6    See Maximillian's other Tweets

And the city is raising the price of parking from next to nothing all the way up to almost nothing and Marty Golden is not happy about it:

**Streetsblog New York**
@StreetsblogNYC

Get Marty Golden to send John Flanagan a message about the end of speed cameras that's as angry as this tweet about parking meter rates going up 50 cents an hour.
twitter.com/SenMartyGolden ..



**Senator Marty Golden** @SenMartyGolden
This is unbelievable! @NYC_DOT

3:40 PM - Aug 6 2018

♡ 90  ♡ 31 people are talking about this

Please.

If placard-wielding Marty Golden can prove he knows how to operate a Muni Meter I'll pay every one of his outstanding speed camera tickets.

Moving on, here comes the Post to throw dockless bike share under the bus (https://nypost.com/2018/08/06/dockless-bikes-are-already-clogging-nyc-sidewalks/):

10/29/2018                     August 7th 2018: There Aren't Enough Dockless Bikes And They're Cluttering The Sidewalks | Transportation Alternatives

## Dockless bikes are already clogging NYC sidewalks



*Uber subsidiary JUMP placed 100 of its "pedal-assist" dockless bikes near Fordham University and in the central Bronx on July 28 — and on at least one day last week only eight of them were anywhere to be found in the service area.*

*Of those, only two were even in rideable condition. The rest were either not charged up or already broken. Five of them were piled together on a sidewalk, all flashing the message, "Bike in repair, sorry for the inconvenience."*

Wait, are the bikes "clogging NYC sidewalks," or are there not enough of them?  Sure, I agree that Jump needs to have more working bikes (https://www.transalt.org/bike-forecast/2018/01/august-2nd-2018), but come on.  Also, that bike appears to be parked rather considerately, and the only thing in the photo clogging the sidewalk is that mail cart.

Still, spare a thought for the Rockaway resident who sometimes sees bikes remain in the same place fore three (3) whole days:

*Lime and a third company, Pace, debuted pedal-only bikes in the Rockaways in Queens about two weeks earlier, and while the cycles were available for riders, the drop-off-anywhere system wasn't sitting well with residents.*

*"They drop them off outside any house or in the middle of the streets and leave them there until someone takes them again," complained Mike McCann, who lives in the Rockaways. "They could be there for three nights."*

It costs $1 to use a Lime bike.  That's almost as cheap as the parking in Bay Ridge.  Why not just move the bike yourself if it's bothering you so much?  Just imagine you could pay $1 to move a car if you didn't like where it was instead of having to go through 311 and the NYPD:



Sounds like paradise.

Case 1:18-cv-09985-VM   Document 18   Filed 02/22/19   Page 18 of 20

10/29/2018                    August 7th, 2018 : Things Aren't All Rough Dockless Bikes Are The Wave Of The 70s The Sidewalks | Transportation Alternatives

In other news, the CBC takes a look at Vision Zero New York style (https://www.cbc.ca/news/world/new-york-s-vision-zero-success-provides-road-map-for-others-taking-aim-at-pedestrian-deaths-1.4771286):



*"If we could bring [Queens Boulevard] from the 'Boulevard of Death' to a place where people want to walk and want to bike, then really nothing is impossible," said Julia Kite, with New York's Department of Transportation.*

*Giving pedestrians a head start of a few seconds — known as leading pedestrian intervals — is one way of engineering safety, she said. Research shows that this step, which was recently adopted at a dozen intersections (https://www.toronto.ca/services-payments/streets-parking-transportation/traffic-management/traffic-signals-street-signs/types-of-traffic-signals/leading-pedestrian-interval-phase/) in Toronto, reduces crashes by 60 per cent.*

*"There's no reason to accept that it's just ... the status quo, the fact that people are going to get hit or killed or injured in traffic," Kite said. "It's a way of realizing that we can engineer out of consequences of human error."*

Though after awhile they really start scraping the bottom of the barrel for people to interview:



Who's this guy and what's a "bike plane"?

Finally, Speaker of the State Assembly Carl Heastie has been riding in the Bronx (http://gothamist.com/2018/08/06/carl_heastie_bike_cyclists.php):



**Christopher Robbins**
@ChristRobbins

spoke to @CarlHeastie about the joys of cycling in the Bronx, and drivers parked in the bike lane (spoiler: sometimes he salmons!) gothamist.com/2018/08/06/car.

3:31 PM - Aug 6, 2018



**Is Assembly Speaker Carl Heastie NYC's Mo...**
Last month, Mayor Bill de Blasio got on a bicycle for the first time in nearly a decade, but it was a quick trip on a boardwalk to show off the City's
gothamist.com

♡ 32   See Christopher Robbins's other Tweets

And contending with double-parked cars:

> Has riding to work made you more attuned to things like potholes? Or the way traffic is managed? Things you may not notice if you're in a car or on the bus.
>
> I think that does work that way. When you're a pedestrian, a bicycle rider, and in an automobile, I think you get the perspective of each one. Yes, I have noticed that some people aren't considerate to bike riders, as in people who double park, meaning I have to ride all the way out into the middle of the lane, things like that. I have gotten a greater appreciation. And honestly, I haven't had a bike since I was a kid, so it is refreshing my recollection of what it is to have a bike in today's world.
>
> I bet the person double-parked in the bike lane probably doesn't think that they're blocking the Speaker of the State Assembly.
>
> [Laughs] No, I didn't stop and flash anything.

We've all been there.

**3 Comments**   transalt.org                                                                 ● Login

♡ Recommend    Tweet   f Share                                                         Sort by Best

Join the discussion...

LOG IN WITH           OR SIGN UP WITH DISQUS (?)

                      Name



**Otto Carnage** • 3 months ago
Hey, motorist! How about not clogging the planet with your 4 wheeled death machines and assorted body parts. Also quit driving on sidewalks.
   ∧  ∨  • Reply • Share ›



**Aunt Bike** • 3 months ago
Re the Post piece.....I read most of the media's coverage on dockless bikes cluttering sidewalks, and almost all of them feature a photo of a bike parked out of everybody's way. You'd think an editor would tell a reporter if he couldn't get pictures of piled up bikes, to re-write the story and report what's really happening. This #StatenIsland resident is still waiting for our local paper to get started screaming about the upcoming dockless bikeshare sky-falling apocalypse and end of days.
   ∧  ∨  • Reply • Share ›



**paulb** • 3 months ago
I thought that part of the Bronx was pretty flat but true I don't know Hill Avenue. Maybe he can persuade AOC it's not too dangerous to ride a bike in the Bronx.
   ∧  ∨  • Reply • Share ›

✉ Subscribe   Ⓓ Add Disqus to your siteAdd DisqusAdd   🔒 Disqus' Privacy PolicyPrivacy PolicyPrivacy

**TRAVEL ADVISORIES**

Case 1:18-cv-09985-VM Document 18 Filed 02/22/19 Page 20 of 20

10/29/2018 August 7th, 2018: They Don't Even Bother Docking Bikes Anymore, They're Cluttering The Sidewalks | Transportation Alternatives

***Street milling and paving ongoing, check schedule** here
(http://www.nyc.gov/html/dot/html/motorist/resurfintro.shtml).***

**NYPD Ticketing Activity**

Ticketing Alert Level: High

**Pulaski Bridge**

Weeknight closures through 11/2, more here (https://twitter.com/NYC_DOT/status/1052627914171305984)

**Citi Bike**

Good service, check status here (https://member.citibikenyc.com/map/)

**GWB**

Sidewalk open, check for updates (https://twitter.com/GWB_Sidewalk)

**Hudson River Greenway**

Detours due to 181st Street Pedestrian Bridge closure, more here
(https://twitter.com/NYCParks/status/1037096491352027138)

**Henry Hudson Bridge**

Bike/ped path to close until 2019; shuttle bus

Send in a tip (/bike-forecast/tips)



(https://support.transalt.org/give/207606/#!/donation/checkout)