USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DENNIS CLARK,                      :
                                   :     18 Civ. 9985 (VM)
                  Plaintiff,       :
                                   :
     - against -                   :     **DECISION AND ORDER**
                                   :
TRANSPORTATION ALTERNATIVES, INC., :
                                   :
                  Defendant.       :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

By letter dated February 21, 2019, Defendant Transportation Alternatives, Inc. ("TransAlt") requested a pre-motion conference regarding its contemplated motion to dismiss the copyright infringement claim of plaintiff Dennis Clark ("Clark") for failure to state a claim, on the basis of the affirmative defense of fair use. (See "February 21 Letter," Dkt. No. 18; "Complaint," Dkt. No. 1.) By letter dated February 27, 2019, Clark opposed TransAlt's request and sought leave to file a formal brief in opposition to the motion to dismiss. (See "February 27 Letter," Dkt. No. 19.) On March 11, 2019, the Court held a telephonic pre-motion conference on TransAlt's contemplated motion, during which it denied Clark leave to file a formal brief. (See Minute Entry dated March 11, 2019.)

The Court now construes TransAlt's February 21 Letter as a motion to dismiss the Complaint for failure to state a claim

1

pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, TransAlt's's motion is GRANTED.

## I. **FACTUAL BACKGROUND**

This copyright infringement action concerns TransAlt's use of a copyrighted photograph (the "Photograph") -- taken and owned by Clark -- that depicts a dockless bicycle parked at the edge of a sidewalk. (See Complaint ¶¶ 1-18.) On August 6, 2018, a *New York Post* (the "*Post*") article headlined "Dockless bikes are already clogging NYC sidewalks" (the "*Post* Article") ran on the *Post*'s website; in the *Post* Article, the Photograph appears directly below the headline and author byline, but before the article's text. (Id. Ex. C at 1, 3-4.)

The next day, August 7, 2018, a post ran on the "Daily Bike Forecast" blog hosted on TransAlt's website that was headlined "August 7th 2018: There Aren't Enough Dockless Bikes and They're Cluttering the Sidewalks" (the "TransAlt Article"). (Id. ¶ 10, Ex. C at 2.) The TransAlt Article begins by discussing various topics related to New York City transit. (Id. Ex. C at 2-3.) Eventually, the TransAlt Article turns to the topic of the *Post* Article, using the following transition language: "Moving on, here comes the Post to throw dockless

2

bike share under the bus:"[1] (Id. at 3.) After the colon, the TransAlt Article excerpts the *Post* Article in two ways. First, the TransAlt Article provides an image of the *Post* Article (the "Screenshot") that is cropped such that it shows only the *Post* Article's headline, author byline, the Photograph, and Clark's photographer credit -- and not the *Post* Article's text or any other part of the website on which the *Post* Article appeared. (Id. at 4.) Second, below the Screenshot, the TransAlt Article twice provides portions of the *Post* Article's text (set in italicized font to distinguish it from the TransAlt Article's own text, which is set in ordinary, non-italicized font), which the TransAlt Article comments on. (Id.) In addition to making other observations, the TransAlt Article notes that the *Post* made a poor choice in selecting the Photograph -- which shows a dockless bicycle neatly parked on the sidewalk's edge, leaving ample room to walk by -- to accompany the *Post* Article, because instead of serving its purpose of proving the *Post* Article's thesis that dockless bikes are "clogging NYC sidewalks," the Photograph may actually refute the proposition. (See id. ("Wait, are the bikes 'clogging NYC sidewalks,' . . . ? . . . [T]hat bike

---

[1] The words "here comes the Post to throw dockless bike share under the bus" are coded to provide a hyperlink that allows the reader to navigate to the *Post* Article.

3

appears to be parked rather considerately, and the only thing in the photo clogging the sidewalk is that mail cart.").)

A.    TransAlt's First Letter

By letter dated January 22, 2019, TransAlt submitted a letter informing Clark of its intent, if necessary, to request a pre-motion conference concerning TransAlt's contemplated motion to dismiss Clark's Complaint pursuant to Rule 12(b)(6). (See "January 22 Letter," Dkt. No. 13.) TransAlt characterizes this case as "a nuisance-value suit against a nonprofit because it posted a blog that critiqued and satirized a New York Post article that happened to use" the Photograph. (Id. at 1.) In TransAlt's view, its "transformative" use of the Photograph "for purposes of 'criticism, comment,' and satire constitutes quintessential fair use," meaning the "Complaint therefore fails as a matter of law and must be dismissed." (Id. at 2-3 (quoting 17 U.S.C. § 107).)

B.    Clark's First Letter

By letter dated January 24, 2019, Clark explained why he believes a motion to dismiss the Complaint would fail. (See "January 24 Letter," Dkt. No. 14.) Clark argues that TransAlt's use of the Photograph was not transformative, because "no transformation exists where the image is merely

4

used as an illustrative aid to depict the subjects described in the news article." (Id. at 1.) In his view, TransAlt's commentary-based theory of fair use fails, because TransAlt's commentary was directed at the *Post* Article, not the Photograph itself. (Id. at 2.) Clark also argues that TransAlt used more of the Photograph "than was necessary to accomplish its purpose of news reporting," noting that TransAlt "copied a full-color, full-scale image in its entirety and did nothing to transform it aesthetically." (Id. at 3.)

C.    TransAlt's Second Letter

In the February 21 Letter, TransAlt argues that Clark fails to acknowledge that the TransAlt Article is not news reporting, but rather "targeted critique and satire of a specific news article." (February 21 Letter at 2.) In TransAlt's view, the TransAlt Article's commentary was directed at the Photograph in the specific context of how it had been inaptly used as photojournalism to illustrate the *Post* Article. (Id. at 2-3.)

D.    Clark's Second Letter

In the February 27 Letter, Clark argues that TransAlt "has failed to cite any authority . . . to support its position that criticizing the text of a news article permits a secondary user to expropriate the photograph that was

5

published in connection with that news article." (Id. at 2.)
In Clark's view, TransAlt "simply republished the Photograph
as an illustrative aid to comment on the underlying article."
(Id.) "Had Defendant wanted an image of a bicycle," Clark
continues, "it could have commissioned its own photograph; or
it could have licensed the image from Plaintiff." (Id.)

## II.  **ANALYSIS**

A.    Rule 12(b)(6) Standard

Rule 12(b)(6) provides for dismissal of a complaint for
"failure to state a claim upon which relief can be granted."
Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This
standard is met "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." Id. A
complaint should be dismissed if the plaintiff has not offered
factual allegations sufficient to render the claims facially
plausible. See id. However, a court should not dismiss a
complaint for failure to state a claim if the factual

allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

An affirmative defense may be adjudicated on a Rule 12(b)(6) motion to dismiss "where the facts necessary to establish the defense are evident on the face of the complaint." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013). "For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Because Clark's Complaint appends the original and allegedly infringing works -- the Photograph and the TransAlt Article -- as Exhibits A and C, respectively, the Court finds that fair use can be adjudicated at this stage of the litigation; the Court will proceed to analyze the two works "side-by-side." Cariou v. Prince, 714 F.3d 694, 707 (2d Cir. 2013).

B.   Fair Use Doctrine

The fair use defense to a claim of copyright infringement requires weighing (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit education purposes; (2) the nature of the

7

copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. See 17 U.S.C. § 107; Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg LP, 756 F.3d 73, 81 (2d Cir. 2014).

As to the first element of fair use, the Court notes that the TransAlt Article did not reproduce the Photograph as a standalone image, but as part of the Screenshot's composite image that showed the manner in which the Post Article's headline, author byline, and the Photograph were arranged on the Post's website. (See Complaint Ex. C at 4.) Because the Screenshot is cropped to show only the juxtaposition of the Post Article's headline and the Photograph, TransAlt's use of the Photograph in the Screenshot emphasizes the humorous incongruity of the Post's decision to run the Photograph directly below the Post Article's headline, even though the Photograph in fact appears to refute the headline's assertion. As used in the TransAlt Article, then, the Photograph is no longer just a depiction of a dockless bicycle, but a sly barb at the Post's sloppy journalism. Media criticism is not "the same purpose as the[] [Photograph] w[as] originally intended to be used," Barcroft Media, Ltd. v. Coed

8

Media Group, LCC, 297 F. Supp. 3d 339, 351-52 (S.D.N.Y. 2017); hence TransAlt's use "add[ed] something new, with a further purpose or different character, altering the first [work] with new expression, meaning, or message." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994). To that extent, the use was transformative. For the purpose of a satiric commentary on the quality of the Post's reporting on this subject, the Post Article and the Photograph were inseparably connected. Not just any other picture of any other dockless bicycle subsequently taken would have suited the thematic and illustrative critique that the TransAlt Article sought to express. This analysis supports a finding of fair use, because the transformation of original works by a later user lies "at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright." Id. at 579.

Clark argues that TransAlt's use cannot be transformative because the TransAlt Article used the Photograph to critique the Post's journalism, rather than to "comment on any political or social controversy surrounding the very existence of the [Photograph] itself." (February 27 Letter at 2; see also January 24 Letter at 2 ("As the courts in this District have made repeatedly clear, to qualify for the fair use privilege, the news reporting or commentary must

be directed at the copyrighted work itself . . . .").) This proposition is "not correct." Cariou, 714 F.3d at 706. As the United States Court of Appeals for the Second Circuit has instructed, "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative." Id.

Clark's alternative argument that TransAlt's use was non-transformative because TransAlt used the Photograph "to illustrate a news report about dockless bikes" flies in the face of the exhibits Clark appended to his Complaint. (See January 24 Letter at 1.) As Exhibit C makes clear, the section of the TransAlt Article that touches upon dockless bikes is specifically about the incongruity of the Post's publication of an article with an illustration that seems to refute its own headline. (See Complaint Ex. C at 3-4.) Hence the relevant section of the TransAlt Article is not "a news report about dockless bikes" or even a "news article" at all (see January 24 Letter at 1), but rather an opinion piece -- critique of an article that had appeared in the previous day's newspaper.

Clark further misses the point by arguing that TransAlt used the Photograph because it "wanted an image of a [dockless] bicycle." (February 27 Letter at 2.) To the contrary, as suggested above, no image other than the

Photograph specifically as it appeared next to the *Post* Article's headline would have served TransAlt's purposes, for the TransAlt Article focuses on the *Post*'s inapt placement of the Photograph in immediate physical proximity with a headline that the Photograph may contradict. (See Complaint Ex. C at 3-4.) The TransAlt Article did not have an alternative option for visually expressing the point that the Screenshot drives home by showing that the *Post* placed the *Post* Article's headline and the Photograph right next to each other despite their incongruity. In this respect, the TransAlt Article's use of the Photograph constitutes an expression of the author's perception of basic flaws in the *Post*'s coverage of the topic. The Photograph as a standalone image, or a different photograph of a dockless bicycle, would not have sufficed.

The Court also notes that TransAlt's use of the Photograph for non-commercial purposes -- an opinion post on a non-profit organization's blog -- further supports a finding that the first factor cuts in favor of fair use. 17 U.S.C. 107(1); Swatch Grp., 756 F.3d at 83.

As to the second factor of the fair use inquiry, the Court agrees with Clark that, while somewhat pedestrian, the Photograph evinces at least a modicum of artfulness,

11

sufficient to designate it a "creative" (rather than "factual") work for the purposes of fair use analysis. See Authors Guild v. Google, Inc., 804 F.3d 202, 220 (2d Cir. 2015). This classification cuts against a finding of fair use, though this factor "has rarely played a significant role in the determination of a fair use dispute." Id.

As to the third factor of the fair use inquiry, the Court notes that the TransAlt Article reproduced the entire Photograph. This cuts against a finding of fair use, because "a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original." See id. at 221. The Court finds, however, that the use of the entire Photograph was "reasonable in relation to the purpose of the copying," Campbell, 510 U.S. at 586, because TransAlt had to use the Photograph itself if it was to show that the Post placed the Photograph directly under a headline that the Photograph undermined. Again, Clark's argument -- that TransAlt could have commissioned a different photograph of a dockless bicycle, licensed the Photograph, or used no photograph at all (see January 24 Letter at 3) -- is entirely meritless, insofar as it would have produced impractical results: either stifling the TransAlt critique

12

altogether, or requiring its publication with a photographic image that may not have adequately communicated the intended point, and thus not have served the author's purpose. The Screenshot showed the Photograph as used in the context of the *Post* Article to highlight the *Post*'s decision to place this particular photograph directly alongside the *Post* Article's headline. Neither the absence of a photograph, a different photograph of a dockless bicycle, nor the Photograph as a licensed standalone image would have accomplished the purpose of TransAlt's use.

As to the fourth factor of the fair use inquiry, the Court reiterates that the Photograph did not appear on its own, but within the Screenshot. The Screenshot does not function as an illustration of a dockless bicycle, because it also contains the *Post* Article's headline, author byline, and photographer credit. Hence the Screenshot does not compete against the Photograph in the enterprise of depicting dockless bicycles -- there is little risk that someone looking to license or purchase an image of a dockless bicycle would select the Screenshot instead of the Photograph, thereby potentially diverting revenue to TransAlt that would have otherwise gone to Clark. See Capitol Records, LLC v. ReDigi Inc., 910 F.3d 649, 662-63 (2d Cir. 2018). Because the

13

Screenshot is not a "market substitute" for the Photograph, the Court finds that TransAlt's use does not "usurp[] the market of the original work." NXIVM Corp. v. Ross Inst., 364 F.3d 471, 481-82 (2d Cir. 2004). Hence this factor cuts in favor of a finding of fair use.

Weighing the four statutory factors together, see Campbell, 510 U.S. at 577-78, the Court concludes that TransAlt's use of the Photograph was fair and hence "is not an infringement of copyright." 17 U.S.C. § 107. Further, the Court agrees with TransAlt's observation that Clark's arguments so fail to track the facts of this case that they read as if taken from briefing in litigation over an entirely different fact pattern. As the Court noted just days ago in weighing whether to impose frivolous-filing sanctions on Clark's attorney in a different copyright matter, certain of his "practices" as plaintiff's counsel "test the limits of the Court's presumption of good faith." Polaris Images Corp. v. Cable News Network, Inc., 18 Civ. 3875, Dkt. No. 24, at 4 (S.D.N.Y. Mar. 6, 2019).

14

## III. ORDER

Accordingly, for the foregoing reasons it is hereby

**ORDERED** that the motion (Dkt. 18) so deemed by the Court as filed by defendant Transportation Alternatives, Inc. to dismiss the complaint (Dkt. No. 1) of plaintiff Dennis Clark is **GRANTED**.

**SO ORDERED**.

Dated:    New York, New York
          18 March 2019

_____
                    Victor Marrero
                    U.S.D.J.

15